# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BETTY L. HIBBARD,                            )
                                             )
                  Plaintiff,                 )
                                             )
        vs.                                  )          Civ. Action No. 13-622
                                             )
PENN-TRAFFORD SCHOOL DISTRICT,               )
                                             )
                  Defendant.                 )
                                             )

## MEMORANDUM OPINION

CONTI, Chief District Judge

 Pending before the court is a motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), (ECF No. 8), and brief in support, (ECF No. 9), filed by defendant Penn-Trafford School District ("defendant" or the "District"). This case concerns federal and Pennsylvania employment discrimination claims brought by plaintiff Betty L. Hibbard ("plaintiff"), a former school teacher within the District. Hibbard alleges defendant discriminated against her and compelled her resignation because of her age, disability, and gender, and in violation of her federal constitutional rights. Having been fully briefed, defendant's motion to dismiss is now ripe for disposition.

## I. Procedural History

 On May 3, 2013, plaintiff filed a four-count complaint against defendant alleging the District: (1) discriminated against her based upon her age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq.; (2) discriminated against her based upon her disability, in violation of the Americans with Disabilities Act ("ADA"), 42

U.S.C. § 12101 et seq.; (3) discriminated against her based upon her gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; and (4) violated her civil rights under 42 U.S.C. § 1983, based upon violations of her Fourteenth Amendment rights. (ECF No. 2 at 8–12.) Plaintiff's complaint alleges violations of the Pennsylvania Human Relations Act ("PHRA"), 43 PA. CONS. STAT. § 955(a), consisting of age, disability, and sex discrimination claims, and claims of aiding and abetting age, disability, and sex discrimination. (Id.) On July 29, 2013, defendant filed the instant motion to dismiss plaintiff's complaint in its entirety for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 8.) On August 6, 2013, plaintiff filed a response in opposition to defendant's motion to dismiss. (ECF No. 12.) On August 13, 2013, plaintiff filed a motion to deny defendant's motion to dismiss. (ECF No. 13.) The court will consider plaintiff's motion as a supplement to her response in opposition to defendant's motion to dismiss. On September 19, 2013, plaintiff filed an additional response to defendant's motion to dismiss. (ECF No. 17.) The court will consider the additional response as a second supplement to plaintiff's response in opposition to defendant's motion to dismiss. Upon consideration of the submissions of the parties, the court will grant defendant's motion to dismiss plaintiff's complaint in its entirety for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

II.    **Allegations Set Forth in the Complaint**

Plaintiff is a resident of Crabtree, Pennsylvania, a citizen of the United States, and a former teacher within the District. (ECF No. 2 at 1.) Defendant is the Penn-Trafford School District,[1] located in Harrison City, Pennsylvania. (Id.) Prior to October 2010, plaintiff took

---

[1] Plaintiff in the body of her complaint refers to Ramona Pope ("Pope"), the District's Director of Human Resources, and Jeffrey Swartz ("Swartz"), a principal within the District. Pope and Swartz are not listed in the caption and there is no showing that they were served at this point.

"sabbatical leave" from her employment within the District, during which time director of human resources for the District, Ramona Pope ("Pope"), "was her only designated contact." (Id. at 3.) On or about July 21, 2010, plaintiff contacted Pope via telephone to send "official notice of her physician's clearance" and to apprise Pope about her intent to return to her teaching position within the District prior to the start of the 2010-2011 school year.[2] (Id.) On or about August 2, 2012, the Penn-Trafford Board of School Directors (the "school board") "approved [plaintiff's] return to work" for the 2010-2011 academic year, but "added an addendum," conditioning her return upon the approval of a District-approved physician. (Id.) Plaintiff learned about the school board's approval of her return one week later, but she "did not know of [the] addendum" at that time. (Id.)

Plaintiff telephoned Pope to "confirm" her return, but Pope was unavailable. (Id.) Plaintiff asked to speak with the District Superintendent, Dr. Deborah Kolonay ("Kolonay"), who confirmed the school board's approval of her return, but apprised plaintiff about the "addendum." (Id.) Kolonay indicated Pope would return plaintiff's telephone call the following Monday, but after the conversation, a "great delay began," and, with one week remaining before the beginning of the academic year, plaintiff remained uninformed with respect to the status of her return to employment within the District. (Id. at 4.) Plaintiff "learned [Pope] was expected [to be] back at the office momentarily." (Id.) Plaintiff "knew the person answering the phone trying to help her reach [Pope]," and she "did not want to miss [Pope] on the only day she was available." (Id.)

---

The court can only infer that plaintiff refers to them in their official capacities as employees of the District.

[2] Plaintiff's complaint does not provide any further information with respect to the duration or cause for her "sabbatical leave" or her need for a physician. (ECF No. 2 at 3.)

"A few days later," plaintiff received a "certified letter," dated August 24, 2010,[3] from the District's counsel, who directed her to "cease and desist from harassing [Pope]." (Id.) Plaintiff disputes defendant's harassment accusation on grounds that the "one-day [sic] of repeated calls was August 16, 2010" and that she was speaking "directly to a secretary who was advising her that she was expecting Ms. Pope to be in the office momentarily."[4] (Id.) Plaintiff learned Pope "introduced [plaintiff's] long-term substitute on the first day to the staff." (Id.)

Plaintiff received two additional "certified letters"—one from the "new human resource[s] director," and one from the "new principal"—requiring that she "go over a 2006 now satisfactory improvement plan one day before she returned." (Id.) Plaintiff's union representative, Shaun Rinier, advised plaintiff "not to sign" the plan after "declar[ing] the once again revised" performance improvement plan "'undoable' under any circumstances." (Id.) Plaintiff "was not permitted to return" to work until after her students returned from a field trip but "before open house and the next board meeting," during which time, plaintiff asserts, she "could have been [at the school] getting ready" for the academic year. (Id.)

On or about September 24, 2010, plaintiff returned to her position as a teacher within the District, but "the revised improvement plan now included directives [that] she was to do on top of an old severe elongated end of year 2006 Improvement Plan, satisfactory at the end of 2007 restored for her return." (Id.) The improvement plan included "unrelated directives regarding return to school, [and] things done on the in-service days she was denied," which, she asserts,

_____

[3] The academic year began on August 25, 2010. (ECF No. 2 at 3.)

[4] Plaintiff asserts she "earnestly needed" to reach Pope because she "always prepared the classroom ahead [of time] as any devoted teacher would do." (ECF No. 2 at 4.) According to plaintiff, Pope's "delay blocked [her] return for in-service days, preparation for the classroom, and being with her students on the first day of the new school year." (Id.)

interfered with her attempts to complete the "many beginning of the year things yet to be done" in the six days preceding her return to teaching. (Id.) Swartz "moved [plaintiff] to another classroom, prior to her return and intact until then, and her resources and materials were scattered." (Id.) During this time, plaintiff alleges Swartz "created and instrumented many distractions," including "interject[ing] sarcasm, disdain, and interruptions all through the week."[5] (Id. at 5.)

During "the first three days" of her return to teaching within the District, plaintiff's "long term substitute" was allowed to finish teaching a six-week science unit, after which plaintiff "began teaching" by "introduc[ing] social studies texts and lessons for the next six weeks during her last ever three teaching days." (Id.) Swartz informed plaintiff that she was to prepare an "open house presentation" for the students' parents in her classroom. (Id.) Swartz, however, "transferred her to the library" against the advice of her union representative. (Id. at 6.)

At the end of the day on October 1, 2010, Swartz "unexpectedly appeared in the classroom," where he "smilingly invited [plaintiff] to his office to go over the [since-completed] open house." (Id.) During the discussion, Swartz "reveal[ed] his desire, intent, and plan" to terminate plaintiff, after which she was unable to "advise [her] students, colleagues, and parents [because] communications already were severed . . . with a letter [Kolonay] advised the [D]istrict's [a]ttorney to send her." (Id.) According to plaintiff, the timing of the situation left her "no recourse except to resign" because Swartz stated plaintiff "would probably be asked to appear before a board of directors meeting early the next week."[6] (Id.)

---

[5] According to plaintiff, these "distractions" included giving her "in-service paperwork on the second day," providing her with "her own computer newly restored on the third day in the hallway that did not work with her password," and "[coming] to say [plaintiff] and her long term substitute could have two hours overtime after her three days of teaching." (ECF No. 2 at 4.)

Plaintiff "asked for help" from her union representative, "but he felt there was no more he could do," and she "wanted to spare him" and avoid involving "him [and] the staff [in] her personal humiliation" because "she thought [Swartz] would use that against them." (Id. at 7.) Plaintiff's union representative "told her earlier" that "he had filed a grievance for her earlier in case she needed it," but later the union informed her that "he did not file any grievance for her." (Id.)

Plaintiff travelled to the Hunker, Pennsylvania office of the Pennsylvania State Education Association ("PSEA"), where she sought assistance from UniServ Representative, Alisa Murray, who referred plaintiff to PSEA attorney, Sarah Wines ("Wines"). (Id.) Wines "helped [plaintiff] write a letter to rescind the brief resignation she was asked to submit" during her October 1, 2010 meeting with Swartz, and Wines suggested she "might enlist" the Pennsylvania Human Relations Commission ("PHRC") and, "indirectly," the United States Equal Employment Opportunity Commission ("EEOC") (Id.) PHRC Intake Specialist and Investigator, Qwendolyn Ormes, handled plaintiff's case and "assured [plaintiff] she would try to mediate a solution and resolution to the filed complaint satisfying both parties." (Id.) The PHRC, however, closed plaintiff's case after one hundred and eighty days "[d]ue to the delayed response of the [D]istrict to her [PHRC and EEOC] complaint." (Id. at 8.) Plaintiff then filed the instant action. (Id.)

III.    **Standard of Review**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court is not opining on whether the plaintiff will

---

[6] Plaintiff asserts "she would have gladly appeared before" the board of directors "if the board had approached her personally" because she "needed [their] help, and they did not know the entire story only she could share with them." (Id. at 6.)

be likely to prevail on the merits; rather, when considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all well-plead factual allegations in the complaint and views them in a light most favorable to the plaintiff. <u>U.S. Express Lines Ltd. v. Higgins</u>, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> (citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." <u>Id.</u> "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 556).

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

<u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 556) (internal citations and quotations omitted).

Two working principles underlie <u>Twombly</u>. <u>Iqbal</u>, 556 U.S. at 678–79. First, with respect to mere conclusory statements, a court need not accept as true all the allegations contained in a complaint. <u>Id.</u> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 678 (citing <u>Twombly</u>, 550 U.S. at 555.) Second, to survive a motion to dismiss, a claim must state a plausible claim for relief. <u>Id.</u> at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> (citing <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157–58 (2d Cir. 2007)). "But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. (quoting FED. R. CIV. P. 8(a)(2)).

A court considering a Rule 12(b)(6) motion to dismiss may begin by identifying allegations that are not entitled to the assumption of truth because they are mere conclusions. Id. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity, then determine whether they plausibly gives rise to an entitlement to relief." Id.

While pro se plaintiffs are not held to as high a standard as litigants represented by counsel, a pro se plaintiff must still plead the essential elements of his or her claim and is not excused from conforming to the standard rules of civil procedure. McNeil v. United States, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel . . . ."); Haines v. Kerner, 404 U.S. 519, 520 (1972).

The court may grant a plaintiff leave to amend a complaint under Federal Rule of Civil Procedure 15, which provides: "The court should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15. Rule 15, however, "does not permit amendment when it would be futile. Futility "'means that the complaint, as amended, would fail to state a claim upon which relief could be granted.'" Kenny v. United States, No. 10-4432, 2012 WL 2945683, at *4 (3d Cir. July 19, 2012) (citing Burtch v. Millberg Factors, Inc., 662 F.3d 212, 231 (3d Cir. 2011)). "The standard for deciding whether claims are futile for the purpose of granting leave to amend a complaint is the same as a motion to dismiss." Markert v. PNC Financial Servs. Group, Inc., 828 F. Supp. 2d 765, 771 (E.D. Pa. 2011). "[I]f the court determines that plaintiff has had multiple

opportunities to state a claim but has failed to do so, leave to amend may be denied." See 6 CHARLES A. WRIGHT, ARTHUS R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 2010).

## IV. Discussion

### A. ADEA and PHRA age discrimination claims

Plaintiff alleges defendants' conduct "constitutes unlawful age discrimination" pursuant to the ADEA and PHRA. (ECF No. 2 at 8.) The ADEA provides, in pertinent part:

> It shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

29 U.S.C. § 623(a)(1). Employment discrimination claims filed pursuant the ADEA are analyzed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and expounded upon in Reeves v. Sanderson Plumbing Prods., 530 U.S. 133 (2000). Smith v. City of Allentown, 589 F.3d 684, 689–92 (3d Cir. 2009). Pursuant to this framework, plaintiff bears the initial burden of establishing a prima facie case of age discrimination, which requires a showing that: (1) plaintiff was forty years of age or older at the time in question; (2) defendant took an adverse employment action against her; (3) plaintiff was otherwise qualified for her position; and (4) the adverse employment action occurred under circumstances which "raise an inference" of unlawful age discrimination. Id. (citing McDonnell Douglas, 411 U.S. at 802). The fourth element generally requires plaintiff to demonstrate that defendant ultimately replaced her with another employee who was "sufficiently younger to support an inference of discriminatory animus."[7] Id.

---

[7] Pursuant to the McDonnell Douglas framework, if the plaintiff establishes a prima facie case of age discrimination, the burden of production shifts to the employer "to articulate some

Plaintiff enjoyed similar statutory protections against age discrimination pursuant to the

PHRA, which declares it an "unlawful discriminatory practice"

> [f]or any employer because of . . . [the] *age* . . . of any individual . . . to bar or to discharge from employment such individual . . . or to otherwise discriminate against such individual . . . with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual . . . is the best able and most competent to perform the services required.

---

legitimate, nondiscriminatory reason" for the adverse employment action. McDonnell Douglas, 411 U.S. at 802. If the employer is able to articulate a legitimate reason for its action, the presumption of age discrimination fails, and "the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999). Because a Rule 12(b)(6) motion to dismiss merely tests the legal sufficiency of the complaint, Kost, 1 F.3d at 183, it is necessary only to determine whether plaintiff's complaint sets forth a prima facie case of age discrimination pursuant to the ADEA, as evidentiary burdens are inapposite at the pleadings stage. Twombly, 550 U.S. at 555.

Defendant contends a prima facie showing of ADEA age discrimination requires plaintiff to plead facts plausibly establishing age as the "but-for" cause for her adverse employment action pursuant to Gross v. FBL Financial Servs., 557 U.S. 167 (2009). (ECF No 9 at 3.) Whether Gross's "but-for" standard altered the requirements for a prima facie showing of ADEA age discrimination at the pleadings stage is unsettled in the Third Circuit. In City of Allentown, 589 F.3d at 689–90, the Court of Appeals for the Third Circuit stated that, after Gross, the burden of production, "including the burden of proving 'but for' causation or causation in fact," remained on the employee "[t]hroughout [the McDonnell Douglas] burden-shifting exercise" in an ADEA case. There, however, the defendants stipulated to the plaintiff's prima facie case of ADEA age discrimination at the pleadings stage. Id. The court noted Gross "require[ed] that the plaintiff prove but-for causation from the outset of an ADEA case," but then held that the plaintiff "[bore] the burden of proof and the initial burden of production" of demonstrating "a [prima facie] case of discrimination by showing" that the plaintiff "was ultimately replaced by another employee who was sufficiently younger to support an *inference of discriminatory animus*." Id. (emphasis added.) It is, thus, unsettled in the Third Circuit whether ADEA plaintiffs must plead facts plausibly establishing "but-for" causation, or facts merely leading to an "inference of discriminatory animus," a presumably lower standard.

Because the majority of courts in the Third Circuit applying the McDonnell Douglas framework to ADEA claims apply the "inference" standard with respect to the plaintiff's initial prima facie showing, and no decision by the Third Circuit Court of Appeals requires "but-for" causation be plead at the pleadings stage, this court applies the "inference" standard with respect to the instant Rule 12(b)(6) motion. See, e.g., Novak v. Posten Taxi Inc., 386 F. App'x 276, 277–78 (3d Cir. 2010) (applying the "inference" standard to measure the legal sufficiency of a complaint alleging ADEA violations after acknowledging City of Allentown). In any event, defendant argues for and applies the "inference" standard one paragraph after arguing for the Gross "but-for" standard. See (ECF No. 9 at 3.) (citing Potence v. Hazleton Area Sch. Dist., 357 F.3d, 366, 370 (3d Cir. 2004)).

43 PA. CONS. STAT. § 955(a) (emphasis added). Although the PHRA is a statute of independent force under Pennsylvania law, it has generally been construed as coextensive with its federal counterparts, which include the ADEA. Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) (citing Chmill v. City of Pittsburgh, 412 A.2d 860, 871 (Pa. 1980) (recognizing that "the [PHRA] should be construed in light of 'principles of fair employment law which have emerged relative to the federal [statutes]'")). For this reason, in the absence of contrary authority from Pennsylvania courts, the PHRA is construed in the same manner as its corresponding federal antidiscrimination provisions, unless the relevant statutory language indicates a different construction is warranted. Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002).

Individuals may not be held liable under the ADEA. Hill v. Borough of Kutztown, 455 F.3d 225, 246 n.29 (3d Cir. 2006); Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 183–84 (3d Cir. 1997). The PHRA, however, declares it an "unlawful discriminatory practice" for "any person" to "aid, abet, incite, compel or coerce" the commission of an act proscribed thereunder. 43 PA. CONS. STAT. § 955(e). This provision is construed to impose individual liability on supervisors who aid and abet unlawful employment discrimination. Dici v. Pennsylvania, 91 F.3d 542, 552–53 (3d Cir. 1996).

Plaintiff fails to allege sufficient facts for this court to infer that it is plausible she can establish a prima facie case of age discrimination under the ADEA and PHRA. For this reason, plaintiff's ADEA and PHRA age discrimination claims must be dismissed for failure to state a claim upon which relief can be granted. Each requirement for a prima facie case of age discrimination will be addressed in turn.

   1.   **Plaintiff was forty years of age or older at the time in question**

With respect to the first requirement for a prima facie showing of age discrimination, the ADEA provides that its prohibitions are "limited to individuals who are at least 40 years of age." 29 U.S.C. § 631(a). Because plaintiff was sixty-four years of age at the time of her resignation from the District on October 15, 2010, she was entitled to statutory protection under the ADEA and PHRA during the period of time relevant to this case. (ECF No. 2 at 8); City of Allentown, 589 F.3d at 689–90.

## 2. Defendant took an adverse employment action against plaintiff

With respect to the second requirement for a prima facie showing of age discrimination, plaintiff must allege facts which raise a plausible inference that defendant took an "adverse employment action" against her. City of Allentown, 589 F.3d at 689–92. An adverse employment action, sufficient to support a prima facie case, must be "a significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998). Such an action "in most cases inflicts direct economic harm and requires an official act taken by a supervisor within the company who has the power to make economic decisions affecting employees under his or her control." Id. at 762. The action must be objectively tangible and material, "as opposed to conduct that the employee generally finds objectionable." Nelson v. Upsala Coll., 51 F.3d 383, 387–88 (3d Cir. 1995).

Plaintiff alleges defendant took an adverse employment action against her because: (a) defendant placed her on a performance improvement plan, or "PIP"; (b) defendant constructively discharged her; (c) defendant threatened her with termination; and (d) defendant refused to rescind her resignation. Each allegation will be addressed in turn.

## a. Plaintiff's placement on a performance improvement plan

The action that had the "most potential" to constitute an adverse employment action in the instant case was plaintiff's placement on a PIP. Reynolds v. Dep't of Army, 439 F. App'x 150, 153 (3d Cir. 2011). Plaintiff alleges that, upon her return to employment, defendant mandated that she adhere to a "revised improvement plan," which plaintiff's union representative declared "'undoable' under any circumstances." (ECF No. 2 at 4.) Plaintiff alleges that the PIP included "unrelated directives regarding return to school, [and] things done on the in-service days she was denied," which, she asserts, interfered with her attempts to complete the "many beginning of the year things yet to be done." (Id.)

An employer's placement of an employee on a PIP, standing alone, does not constitute an adverse employment action, absent "accompanying changes to pay, benefits, or employment status." Reynolds, 439 F. App'x at 153; Haynes v. Level 3 Commc'ns, L.L.C., 456 F.3d 1215, 1224 (10th Cir. 2006); Givens v. Cingular Wireless, 396 F.3d 998, 998 (8th Cir. 2005); Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003); Agnew v. BASF Corp., 286 F.3d 307, 310 (6th Cir. 2002). In Reynolds, the employer placed the employee on a PIP that gave the employee ninety days to bring his performance to an "acceptable level" or "face possible reassignment, demotion, or termination." Reynolds, 439 F. App'x at 151. After receiving notice of the PIP, the employee voluntarily retired and brought age discrimination claims against the employer. Id. In assessing whether the employee demonstrated an adverse employment action for purposes of the ADEA, the Third Circuit Court of Appeals noted:

> A PIP differs significantly from the types of employment actions that qualify as adverse. As illustrated by this case, PIPs are typically comprised of directives relating to an employee's preexisting responsibilities. In other words, far from working a change in employment status, a PIP is a method of conveying to an employee the ways in which that employee can better perform the duties that he or she already has. We note that a likely consequence of allowing suits to proceed on the basis of a PIP would be more naked claims of discrimination and greater frustration for employers seeking to improve employees' performance. Thus,

because [the employee] failed to demonstrate that his PIP was accompanied by an adverse change in the conditions of his employment, we hold that [the employee's] placement on the PIP did not qualify as an adverse employment action.

Id. at 153.

Like in Reynolds, plaintiff in the instant action does not allege that she was terminated, suspended, demoted, reassigned, denied an expected raise, or denied a requested promotion as a result of her placement on the PIP. Plaintiff does, however, allege that defendant's imposition of the "undoable" PIP was one facet of defendant's conduct that compelled her resignation—or resulted in her "constructive discharge"—as it created unreasonable working conditions and culminated in threats of termination. In order to assess whether it is plausible that the PIP's imposition was accompanied by an adverse change in the conditions of her employment, Reynolds, 439 F. App'x at 153, the court must consider whether the factual allegations are sufficient for this court to infer that defendant constructively discharged plaintiff.

**b.** **Constructive Discharge**

A plaintiff who voluntarily resigns may assert a claim of constructive discharge when the employer's allegedly discriminatory conduct "creates an atmosphere that is the constructive equivalent of a discharge." Gray v. York Newspapers, Inc., 957 F.2d 1070, 1079 (3d Cir. 1992). The resignation is treated as if it were an outright dismissal by the employer, which can serve as the basis for a discrimination claim. Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 167–68 (3d Cir. 2001). The employer's action "must work some serious and substantial tangible harm" that "alters an employee's compensation, terms, conditions or privileges of employment" and "makes working conditions so unpleasant or intolerable that a reasonable person in the employee's shoes would resign." Gray, 957 F.2d at 1079. An employee's reliance on the subjective impact of the employer's actions will not suffice, as "the law does not permit an

employee's subjective perceptions to govern a claim of constructive discharge." <u>Id.</u> at 1082 (citing <u>Bristow v. Daily Press, Inc.</u>, 770 F.2d 1251, 1255 (4th Cir. 1985)).

Plaintiff alleges defendant imposed a PIP on her and "mov[ed] [plaintiff] to another classroom, prior to her return," where her "resources and materials were scattered." (<u>Id.</u>) Plaintiff alleges defendant "created and instrumented many distractions," including "interject[ing] sarcasm, disdain, and interruptions," giving her "in-service paperwork on the second day" of work, providing her with "her own computer newly restored on the third day in the hallway that did not work with her password," and "[coming] to say [plaintiff] and her long term substitute could have two hours overtime after her three days of teaching." (<u>Id.</u> at 4–5.)

These allegations are not sufficient for the court to infer a constructive discharge for purposes of establishing an adverse employment action pursuant to the ADEA and PHRA. Plaintiff's assertions merely "detail[] a series of workplace slights" and "petty grievances," which do not raise a plausible inference that defendant's conduct "ma[de] working conditions so unpleasant or intolerable that a reasonable [teacher] in the employee's shoes would resign." <u>Pagan v. Holder</u>, 741 F. Supp. 2d 687, 696 (D. N.J. 2010); <u>Gray</u>, 957 F.2d at 1079; <u>Levendos v. Stern Entertainment, Inc.</u>, 860 F.2d 1227, 1230 (3d Cir. 1988).

In <u>Levendos</u>, the Third Circuit Court of Appeals found that a triable issue of fact existed with respect to a constructive discharge claim where the plaintiff-employee adduced evidence that, <u>inter alia</u>, she was the only woman in a management position; she was excluded from management meetings; the general manager of the restaurant boasted that she "would not be there long"; management told other employees that the plaintiff did not fit the mold of a maitre'd because she was a woman; the owner asked an employee to find a man to replace the plaintiff; management falsely accused her of stealing, drinking, and fraternizing with employees; and on

one evening she discovered wine bottles placed in her locker to make it appear as if she were stealing. Levendos, 860 F.2d at 1228. The employee resigned, stating that her decision was precipitated by her employer's accusations that she was stealing from the company. Id. The court held that the record "contain[ed] more than a scrap of evidentiary material . . . from which a fact-finder could infer that conditions at the restaurant were so intolerable that a maitre'd of reasonable sensitivity would be forced to resign." Id. at 1231.

In the instant case, plaintiff fails to allege facts which raise a plausible inference that the District imposed conditions on plaintiff so intolerable and discriminatory that a teacher of reasonable sensitivity would be forced to resign. Id. Unlike Levendos, in which the plaintiff alleged specific, objectively severe instances of discriminatory conduct on the part of her employer, plaintiff alleges conduct on the part of the District that she subjectively perceived to be objectionable. Plaintiff's allegations align with Pagan, in which an employee alleged constructive discharge after her resignation on grounds that her employer denied her requests for days of annual leave; took three weeks to repair her air conditioner; forced her to work alone in the gymnasium; boxed up her supplies; and removed her from her former work station. Pagan, 741 F. Supp. 2d at 687. The court found that the employee's allegations did not rise to the level of a constructive discharge because she failed to show that working conditions were so unpleasant or intolerable that a reasonable person in her shoes would have resigned. Id.

As noted by the Court of Appeals for the Fourth Circuit:

the law does not permit an employee's subjective perceptions to govern a claim of constructive discharge. Every job has its frustrations, challenges and disappointments; these inhere in the nature of work. An employee is protected from a calculated effort to pressure h[er] into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by h[er] co-workers. [Sh]e is not, however, guaranteed a working environment free of stress. The employment discrimination laws require as an absolute precondition to suit that some adverse employment action have occurred. They cannot be transformed into

a palliative for every workplace grievance, real or imagined, by the simple expedient of quitting.

Bristow, 770 F.2d at 1255. Like in Pagan, and Bristow, plaintiff's allegations fail to raise a plausible inference that defendant engaged in a calculated effort to pressure plaintiff into resigning through the imposition of objectively unreasonable conditions. Id. For these reasons, plaintiff fails to allege sufficiently that the District constructively discharged her.

### c. **Threats of termination**

Plaintiff alleges "she had no recourse except to resign" from employment after meeting with Swartz on October 1, 2010 because Swartz "said [plaintiff] would probably be asked to appear before a board of directors meeting" after he "reveal[ed] his desire, intent, and plan to terminate her." (ECF No. 2 at 6.) Plaintiff's allegations with respect to Swartz's threats of termination do not lead to the plausible inference that the District actually took an adverse employment action against her, as required for a prima facie showing of age discrimination. Plaintiff voluntarily resigned before Swartz's threat of termination could ever be carried out. "Mere threats . . . do not rise to the level of an adverse employment action" because, in the absence of constructive discharge, they do not result in materially adverse consequences or objective, tangible harm. Leitch v. MVM, Inc., No. Civ. A. 03-4344, 2004 WL 1638132, at *9 (E.D. Pa. July 22, 2004); Reynolds v. Dep't of Army, Civ. 08-2944, 2010 WL 2674045, at *12 (D. N.J. June 30, 2010) aff'd, 439 F. App'x 150 (3d Cir. 2011) ("[O]ther than general assertions by [the employee] that [the employer] told him that [he would lose his employment status and suffer a pay decrease], there is no support . . . for a finding that [the employee's] pay was ever actually reduced or that he received a downgrade in status.")

In Leitch, former-employees alleged age discrimination on grounds that their employer threatened them with termination when the employees failed to meet physical fitness and

medical standards. <u>Leitch</u>, 2004 WL 1638132, at *4. In assessing whether the threats constituted an adverse employment action, the court held:

> [t]hose plaintiffs who have only been threatened with termination have not pleaded an adverse employment action of the type that affords the protection of the ADEA . . . . [T]he plaintiffs merely threatened with termination have not alleged a significant change in employment status. Therefore, the ADEA claims against [the employer] based on mere threats of termination will be dismissed for failure to state a claim upon which relief can be granted.

<u>Id.</u> (internal quotations and citations omitted). For the same reasons, plaintiff's allegations that Swartz threatened her with termination, in the absence of a plausible showing of constructive discharge, do not amount to an adverse employment action. Plaintiff fails to allege plausibly that defendant's threats actually culminated in a "significant change in [her] employment status." <u>Id.</u>

### d.     The District's refusal to rescind plaintiff's resignation

Finally, plaintiff alleges the District took an adverse employment action against her by failing to rescind her letter of resignation. (ECF No. 2 at 10). Failure to accept a previous employee's rescission of a voluntary resignation is not, on its own, an adverse employment action "for the simple reason that the employment relationship has ended." <u>Schofield v. Metro. Life Ins. Co.</u>, 3:CV-03-0357, 2006 WL 2660704 (M.D. Pa. Sept. 15, 2006), <u>aff'd</u>, 252 F. App'x 500 (3d Cir. 2007). Because plaintiff's resignation was voluntary and there was no constructive discharge, the District's failure to accept her rescission of her voluntary resignation was not an adverse employment action. <u>See, e.g.</u>, <u>Wilkerson v. Springfield Pub. Sch. Dist. No. 186</u>, 40 F. App'x 260, 263 (7th Cir. 2002) (finding that the school district "was under no duty to allow [plaintiff] to rescind his resignation after he submitted his signed resignation, turned in his keys, and stopped working" and that the defendant, therefore, "never took an adverse employment action against [plaintiff]"); <u>Cadet v. Deutsche Bank Sec. Inc.</u>, No. 11 Civ. 7964, 2013 WL 3090690, at *14 (S.D.N.Y. June 18, 2013); <u>Hammonds v. Hyundai Motor Mfg. Ala. L.L.C.</u>, No.

2:10–cv–103, 2011 WL 2580168, at *4 (M.D. Ala. June 28, 2011) ("So long as the resignation was voluntary and not a result of coercion or duress, there is no constructive discharge and the failure to accept rescission of a voluntary resignation is not an adverse employment action."); Rutledge v. SunTrust Bank, No. 8:05-CV-536-T27, 2007 WL 604966, at *7 (M.D. Fla. Feb. 22, 2007) (finding that defendant's refusal to allow an employee to rescind a voluntary resignation is not an adverse employment action); MacLean v. City of St. Petersburg, 194 F. Supp. 2d 1290, 1299 (M.D. Fla. 2002) (finding that, unless "the employer forces the [employee's] resignation by coercion or duress" or "obtains the resignation by deceiving or misrepresenting a material fact," an employee resignation is "presumed to be voluntary," and, therefore, the employer's "failure to accept [the employee's] rescission of her voluntary resignation [is] not an adverse employment action").

Plaintiff fails to set forth factual allegations which raise a plausible inference that defendant took an adverse employment action against her, as required for a prima facie showing of age discrimination pursuant to the ADEA and PHRA.

### 3.    Plaintiff was otherwise qualified for her position

A plaintiff's qualifications for purposes of proving a prima facie case of age discrimination are assessed by an objective standard. Weldon v. Kraft, Inc., 896 F.2d 793, 798 (3d Cir. 1990). Whether an employee possessed a subjective quality, such as leadership or management skills, is irrelevant for purposes of making out a prima facie case. Id. Because plaintiff's complaint contains facts alleging that she was previously employed by the District before her resignation, she raised a plausible inference that she was otherwise qualified for her position as a teacher at the time of her resignation. See Sempier v. Johnson & Higgins, 45 F.3d

724, 729 (3d Cir. 1995) (finding an employee was "otherwise qualified" for his position based upon his past employment history at the defendant-employer's place of business).

4.    **The adverse employment action occurred under circumstances which "raise an inference" of unlawful age discrimination**

To satisfy the fourth element for a prima facie case of age discrimination, plaintiff must pleads facts plausibly establishing that the circumstances of defendant's adverse employment action give rise to an inference of age discrimination. Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410–11 (3d Cir. 1999). While the fourth element generally requires the employee to demonstrate that the employer ultimately replaced her with another employee who was "sufficiently younger to support an inference of discriminatory animus," a "common circumstance" giving rise to an inference of unlawful age discrimination is the "more favorable treatment of similarly situated colleagues outside of the relevant class." Bullock v. Children's Hosp. of Phila., 71 F.Supp. 2d 482, 487 (E.D. Pa. 1999).

Plaintiff discusses only one other colleague in her complaint: her long-term substitute. Plaintiff alleges that she learned Pope "introduced [plaintiff's] long-term substitute on the first day to the staff." (ECF No. 2 at 4.) Plaintiff alleges that, during "the first three days" of her return to teaching within the District, her long-term substitute was allowed to finish teaching a six-week science unit, after which plaintiff "began teaching" by "introduc[ing] social studies texts and lessons for the next six weeks during her last ever three teaching days." Id. at 5. Plaintiff alleges Swartz came to her classroom "to say [plaintiff] and her long-term substitute could have two hours overtime after her three days of teaching." (Id. at 4–5.) Plaintiff does not set forth any further allegations with respect to her long-term substitute or any other colleague within the District.

These allegations fail to "raise an inference" of unlawful age discrimination on the part of defendant, as required for a <u>prima facie</u> case of age discrimination under the ADEA and PHRA. Plaintiff does not allege that the District replaced her with any other employee, let alone a similarly qualified, younger colleague. Plaintiff impliedly alleges that the District accorded more favorable treatment to her long-term substitute by introducing her, and not plaintiff, to the staff on the first day of the school year, and by allowing the substitute to finish teaching plaintiff's class a science unit. Plaintiff, however, fails to allege any facts raising the inference that her long-term substitute was similarly situated to her in terms of her qualifications, or, more importantly, that her long-term substitute was *younger* in age than plaintiff. Plaintiff, therefore, does not allege any facts which raise an inference that age motivated the District's conduct in any way during the timeframe at issue in this case. "[W]here the well-pleaded facts do not permit the court to infer more than the *mere possibility* of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" <u>Iqbal</u>, 556 U.S. at 678–79 (quoting FED. R. CIV. P. 8(a)(2)). Plaintiff's factual allegations do not provide a basis from which the court can infer anything more than the "mere possibility" of unlawful age discrimination. Under these circumstances, plaintiff's ADEA and PHRA age discrimination claims must be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

**B.      ADA and PHRA disability discrimination claims**

Plaintiff alleges defendants' conduct during the timeframe at issue "constitutes unlawful discrimination on the basis of her disability," in violation of the ADA and PHRA. (ECF No. 2 at 9.) The ADA provides, in pertinent part:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). ADA and PHRA disability discrimination claims are analyzed under the

McDonnell Douglas burden-shifting framework. Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir.

2000). Plaintiff must, therefore, make factual allegations sufficient for this court to infer a

plausible claim for disability discrimination. To do so, the factual allegations must allow the

court to infer that: (1) plaintiff has a "disability" as defined by the ADA; (2) plaintiff is an

otherwise "qualified individual"; and (3) plaintiff "has suffered an adverse employment action

because of that disability." Shaner, 204 F.3d at 500; Turner v. Hershey Chocolate U.S., 440 F.3d

604, 611 (3d Cir. 2006). The PHRA, which is coextensive with the ADA, declares it to be an

"unlawful discriminatory practice"

> [f]or any employer because of . . . [the] *handicap or disability* . . . of any
> individual . . . to bar or to discharge from employment such individual . . . or to
> otherwise discriminate against such individual . . . with respect to compensation,
> hire, tenure, terms, conditions or privileges of employment or contract, if the
> individual . . . is the best able and most competent to perform the services
> required.

43 PA. CONS. STAT. § 955(a) (emphasis added); Fogleman, 283 F.3d at 567.

As detailed below, plaintiff failed to set forth sufficient factual allegations for this court

to infer a prima facie case of disability discrimination under the ADA or PHRA. Plaintiff's ADA

and PHRA disability discrimination claims must, therefore, be dismissed pursuant to Rule

12(b)(6). Each element of the prima facie case of disability discrimination will be addressed

below.

### 1.     Plaintiff is "otherwise qualified" and suffers from a "disability"

The ADA defines a "disability" with respect to an individual as: "a physical or mental

impairment that substantially limits one or more major life activities of such individual; a record

of such an impairment; or being regarded as having such an impairment . . . ." 42 U.S.C. §

12102(1)(A–C). "Major life activities" include, but are not limited to "caring for oneself,

performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." § 12102(2).

Plaintiff alleges that she is a "qualified individual with a disability" as defined by the ADA and PHRA because she "has, or had at all times relevant hereto, a physical impairment that substantially limited/limits [one] or more major life activities, or because [she] had a record of such impairment," and because she was "able to perform all of the essential functions of the job, with or without a reasonable accommodation." (ECF No. 2 at 8–9.) Plaintiff argues she suffers from a "disability" as defined by the ADA and PHRA "because [she] was regarded as and/or perceived by [defendants] . . . as having [a] physical impairment that substantially limits/limited one or more major life activities." Id. Plaintiff does not allege any further facts with respect to her disability or her qualifications to perform the essential functions of her job, with or without reasonable accommodations from the District.

Even when accepted as true and viewed in a light most favorable to plaintiff, plaintiff's allegations with respect to her disability and her qualifications constitute the type of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that do not suffice for purposes of stating a plausible claim pursuant to Rule 12(b)(6). Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555.) A court need not accept mere conclusory statements as true. Iqbal, 556 U.S. at 678–79. Plaintiff failed to plead sufficient facts for this court to infer she could make a prima facie showing that she has a "disability" or that she was "otherwise qualified" for purposes of the ADA and PHRA.

## 2. **Plaintiff suffered an adverse employment action because of her disability**

Like the ADEA, an adverse employment action under the ADA and PHRA is an action by an employer that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." <u>Drwal v. Borough of W. View, Pa.</u>, 617 F. Supp. 2d 397, 412 (W.D. Pa. 2009). Discrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also an employer's failure to make reasonable accommodations for a plaintiff's disabilities. <u>Taylor v. Phoenixville Sch. Dist.</u>, 184 F.3d 296, 306 (3d Cir. 1999). The ADA specifies that an employer discriminates against a qualified individual with a disability when the employer does "not mak[e] reasonable accommodations to the *known* physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]." 42 U.S.C. § 12112(b)(5)(A) (emphasis added).

As discussed in the section pertaining to age discrimination, plaintiff fails to make sufficient factual allegations with respect to an adverse employment action. Plaintiff fails to allege facts sufficient for this court to infer that her voluntary resignation constituted constructive discharge or that any other tangible action was taken with respect to her employment within the District.

As discussed, plaintiff fails to allege sufficient facts for this court to infer that she has a "disability" or that she is "otherwise qualified" pursuant to the ADA and PHRA. Plaintiff, therefore, did not allege facts to show it is plausible that the District failed to make reasonable accommodations for her when it *knew* of that physical or mental disability. Under these circumstances, plaintiff's disability discrimination claims under the ADEA and PHRA must be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

**C.**      <u>**Title VII and PHRA gender discrimination claims**</u>

Plaintiff alleges:

> Pope, in permitting [Swartz] to sexually harass *and* retaliate against [plaintiff] despite her complaints, and in failing to rescind a 'resignation' [plaintiff] immediately advised [the District's] Board of School Directors was falsely engineered by [Pope] with her knowledge, despite notice of this fact, constituted ongoing discrimination against [plaintiff] on the basis of her gender.

(ECF No. 2 at 10) (emphasis added). Plaintiff's Title VII and PHRA sexual harassment and retaliation claims will be addressed in turn.

### 1. <u>Harassment based upon plaintiff's gender</u>

Title VII provides that it is an "unlawful employment practice" for an employer "to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex. " 42 U.S.C. § 2000e-2(a)(1). An employer discriminates against an employee because of his or her gender when it engages in gender-based harassment—i.e., the intentional creation of a sexually hostile work environment— that is sufficiently "severe or pervasive" to alter the "terms, conditions, or privileges" of his or her employment. <u>Meritor Savings Bank, FSB v. Vinson</u>, 477 U.S. 57, 63–69 (1986). Harassment which does not alter the "terms, conditions, or privileges" of one's employment, however reprehensible, does not run afoul of Title VII. <u>Id.</u> at 67. In the context of sexual harassment, Title VII "does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." <u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 81 (1998). Title VII's antidiscrimination provision prohibits only those forms of discriminatory harassment that are severe or pervasive enough to create a hostile or abusive working environment. <u>Pa. St. Police v. Suders</u>, 542 U.S. 129, 146–47 (2004).

The inquiry with respect to whether an employee's working environment is sufficiently hostile or abusive to constitute a violation of Title VII encompasses both objective and subjective

components. In <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17 (1993), the Supreme Court explained:

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

<u>Harris</u>, 510 U.S. at 21–22. This test, which is not "mathematically precise," accounts for all relevant factors. <u>Id.</u> at 22. Those factors include, but are not limited to, whether the alleged discriminatory harassment is frequent; whether it is severe; whether it is physically threatening or humiliating; and whether it unreasonably interferes with the employee's work performance. <u>Id.</u> at 23.

An isolated incident amounts to a change in the terms, conditions, or privileges of one's employment only if it is "extremely serious." <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998). "[M]ere offensive utterance[s]," "simple teasing, offhand comments and isolated incidents (unless extremely serious)" do not amount to discriminatory changes in the terms and conditions of employment and are not actionable pursuant to Title VII. <u>Id.</u>

The PHRA, which is coextensive with Title VII, declares it to be an "unlawful discriminatory practice"

> [f]or any employer because of . . . [the] *sex* . . . of any individual . . . to bar or to discharge from employment such individual . . . or to otherwise discriminate against such individual . . . with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual . . . is the best able and most competent to perform the services required.

43 Pa. Cons. Stat. § 955(a) (emphasis added); <u>Fogleman</u>, 283 F.3d at 567.

Plaintiff fails to allege facts sufficient for this court to infer a plausible sexual harassment claim under Title VII and the PHRA. For this reason, plaintiff's Title VII and PHRA sexual

harassment claims must be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

In <u>Harris</u>, the Supreme Court Set forth the applicable standard with respect to whether an employer's conduct is "merely offensive" or serious enough to cause a cognizable injury pursuant to Title VII. In <u>Harris</u>, the employer's male president made disparaging remarks to a female employee in the presence of other employees, including the following: "You're a woman, what do you know"; "We need a man as the rental manager"; and "[You are] a dumb ass woman." <u>Harris</u>, 510 U.S. at 19. The employer suggested that he and plaintiff "go to the Holiday Inn to negotiate [plaintiff's] raise," made sexual innuendos with respect to the employee's and other women's clothing, and asked plaintiff and other female employees to retrieve coins from his front pants pocket. <u>Id.</u> The employer asked the plaintiff while she was arranging a deal with one of the employer's customers: "What did you do, promise the guy . . . some [sex] Saturday night?" <u>Id.</u> The Supreme Court held that this conduct was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" actionable under Title VII. <u>Id.</u> at 21–23. The Court explained that conduct rises to the level of sexual harassment if a reasonable person would find the resulting environment hostile or abusive and if the victim subjectively perceives the environment to be abusive. <u>Id.</u> The Court specified that the conduct need not be "so severe" as to "seriously affect [the employee's] psychological well-being" or "lead [the employee] to suffer injury." <u>Id.</u>

In the instant case, plaintiff fails to allege facts which raise even the "sheer possibility" that defendant sexually harassed her in a "severe or pervasive" way, such that it altered the "terms, conditions, or privileges" of her employment and resulted in an objectively and subjectively hostile environment, as required by <u>Harris</u>. <u>Iqbal</u>, 556 U.S. at 678; <u>Meritor Savings</u>

Bank, FSB, 477 U.S. at 63–69. Plaintiff does not allege, and this court cannot discern, any facts from which the court can plausibly infer that Swartz, Pope, or any other employee within the District engaged in sexually discriminatory conduct that rises to the level of the conduct prohibited by Harris. Plaintiff contends defendant delayed her return to work within the District; required her to adhere to a PIP; caused distractions and interruptions as she prepared for the school year; moved her classroom and classroom materials without her consent; moved her open-house presentation to the library; revealed an intent, desire, and plan to terminate her; and refused to rescind her voluntary resignation. Plaintiff does not, however, plead facts which even suggest that her gender motivated any of defendant's actions. Moreover, none of these actions rise to the level of the "severe or pervasive" discriminatory conduct proscribed by Harris. Plaintiff's Title VII sexual harassment claim must, therefore, be dismissed.

With respect to plaintiff's PHRA sexual harassment claim, plaintiff fails to allege any facts from which the court could plausibly infer that Pope "aided and abetted" Swartz in "severe[ly] or pervasive[ly]" sexually harassing plaintiff, such that it altered the "terms, conditions, or privileges" of her employment for purposes of the PHRA. Even when accepted as true and viewed in a light most favorable to plaintiff, plaintiff's factual allegations constitute the type of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that do not suffice for purposes of plausibly stating a claim pursuant to Rule 12(b)(6). Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555.) For these reasons, plaintiff's sexual harassment claims pursuant to Title VII and the PHRA must be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6)

**2.      Title VII retaliation claim**

Plaintiff, in effect, alleges that the District retaliated against her by refusing to rescind her resignation after learning that she complained about defendant's conduct to her union representative and the PHRC. Title VII's antiretaliation provision forbids employer actions that "discriminate against" an employee (or job applicant) because he has "opposed" a practice that Title VII forbids or has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 59 (2006) (citing 42 U.S.C. § 2000e–3(a)). To establish a claim of retaliation under Title VII and the PHRA, plaintiff must show that: (1) she engaged in a protected employee activity; (2) the employer took adverse action after or contemporaneous with the protected activity; and (3) there was a causal connection between the employee's participation in the protected activity and the adverse employment action. <u>Wilkerson v. New Media Tech. Charter Sch., Inc.</u>, 522 F.3d 315, 320 (3d Cir. 2008). Each factor will be addressed in turn.

### a. Plaintiff engaged in a protected employee activity

The first prong of the <u>prima facie</u> case of retaliation under Title VII requires, at the very least, an informal protest of discriminatory employment practices. <u>Barber v. CSX Dist. Servs.</u>, 68 F.3d 694, 701–02 (3d Cir. 1995). The protest, in whatever medium, must specifically relate to the protected conduct allegedly being infringed. <u>Barber</u>, 68 F.3d at 701.

Plaintiff "asked for help" from her union representative after her resignation. (ECF No. 2 at 7.) Plaintiff sought assistance from UniServ Representative, Alisa Murray and PSEA attorney, Wines after her resignation. (<u>Id.</u>) Wines suggested she "might" enlist the PHRC and, "indirectly," the EEOC after plaintiff's resignation. (<u>Id.</u>) PHRC Intake Specialist and Investigator, Qwendolyn Ormes, handled plaintiff's case after her resignation. (<u>Id.</u>) Plaintiff's union representative "[told] her earlier" that "he had filed a grievance for her earlier in case she

needed it," but later the union informed her "he did not file any grievance for her." (Id.) Plaintiff does not allege any further facts with respect to her engagement in activity protected under Title VII.

While these formal and informal complaints are protected activities under Title VII, plaintiff does not sufficiently allege that her complaints were "specifically relate[d] to the protected conduct allegedly being infringed" for purposes of establishing a prima facie case of gender-based retaliation. Barber, 68 F.3d at 701. Plaintiff does not allege that she complained to her union representative, UniServ, Wines, or the PHRC specifically with respect to gender-based discrimination or sexual harassment. In Barber, the plaintiff sought to prove that his employer retaliated against him because of his age by adducing evidence in the form of a letter to his employer's human resources department, in which he complained about "unfair treatment in general" and "express[ed] his dissatisfaction" without specific references to age discrimination. Id. In assessing whether plaintiff engaged in protected activity, the Third Circuit Court of Appeals found that the generalized letter "[did] not constitute the requisite 'protected conduct' for a prima facie case of retaliation" because its contents were "just too vague to support a finding that [the plaintiff's] job was eliminated because he engaged in behavior that was protected under the ADEA." Id. at 701–02. The court noted that a "general complaint of unfair treatment does not translate into a charge of illegal *age* discrimination." Id. (emphasis in original)

Like in Barber, plaintiff's assertions that she complained to her union representative and the PHRC after her resignation about unfair treatment in general are "too vague" to lead to the plausible inference that the District refused to rescind plaintiff's voluntary resignation because she engaged in behavior that was protected under Title VII and the PHRA. Plaintiff fails to make

out a plausible claim that she engaged in a protected employee activity, as required for a Title VII and PHRA retaliation claim.

###### b. **Defendant took adverse action against plaintiff**

The term "adverse employment action" in the context of retaliation claims traditionally was understood to refer to a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing significant change in benefits." Weston v. Pennsylvania, 251 F.3d 420, 430-31 (3d Cir. 2001); see Pa. St. Police v. Suders, 542 U.S. 129 (2004) (holding that under Title VII, a hostile work environment or constructive discharge may serve for adverse action). The United States Supreme Court, however, in Burlington Northern & Santa Fe Railway v. White, 548 U.S. 53 (2006), interpreted the antiretaliation provisions of Title VII not to be limited to the traditional employment-related actions identified earlier. Id. at 67–69. Instead, plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Id. at 68.

In Burlington Northern, the Supreme Court stressed that an employment action is materially adverse when it causes significant, rather than trivial, harm. Id. Specifically, "an employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." Id. (citing 1 BARBARA LINDEMANN & PAUL GROSSMAN, EMPLOYMENT DISCRIMINATION LAW 669 (3d ed. 1996) (observing that "courts have held that personality conflicts at work that generate antipathy" and "'snubbing' by supervisors and co-workers" are not actionable)). Title VII's antiretaliation provision seeks to provide plaintiffs with "unfettered access," free from interference by employers, to Title VII's remedial mechanisms. Id. (citing

Robinson v. Shell Oil Co., 519 U.S. 337, 346 (1997)). To further this goal, the antiretaliation provision prohibits employer actions that are likely "to deter victims of discrimination from complaining to the EEOC," the courts, and their employers. Id. (citing Robinson, 519 U.S. at 346.). "[P]etty slights, minor annoyances, and simple lack of good manners" will not normally create such deterrence. Id.

For the same reasons plaintiff fails to allege sufficiently that the District took an adverse employment action against her for purposes of the ADEA and ADA, plaintiff fails to sufficiently allege facts for the court to infer that it is plausible the District took an adverse employment action against her for purposes of her Title VII and PHRA retaliation claims. Because plaintiff's resignation was voluntary and there are insufficient factual allegations about a constructive discharge, the court cannot plausibly infer that the District's failure to accept her rescission of that voluntary resignation was an adverse employment action. Plaintiff fails to make a plausible prima facie showing that defendant took an adverse employment action against her, as required for a Title VII and PHRA retaliation claim.

### c. Causal connection

With respect to the existence of a causal link between plaintiff's protected activity and defendant's adverse actions, two factors are relevant: (i) timing and/or (ii) evidence of ongoing antagonism. Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 288 (3d Cir. 2001). ("Temporal proximity . . . is sufficient to establish the causal link. [A] plaintiff can [also] establish a link between his or her protected behavior and subsequent discharge if the employer engaged in a pattern of antagonism in the intervening period.").

### i. Timing

With respect to the first factor, there must be a close temporal proximity between the protected activity and the adverse employment action. Id. While the Third Circuit Court of Appeals has not specified a strict formula for what is considered to be too long of a gap between protected activity and adverse action, courts have held that a time span of several months is too great. See Williams v. Phila. Hous. Auth., 380 F.3d 751, 760 (3d Cir. 2004) (two months too long to permit an inference of causation); George v. Genuine Parts Co., No. 04-108, 2007 WL 217684, at *12 (W.D. Pa. Jan. 25, 2007) (finding that though suggestiveness is highly sensitive to the facts of each case, a three-month gap "is not so close as to be unusually suggestive of retaliatory motive"). Timing, however, in connection with other types of suggestive evidence, is sufficient to demonstrate the causal link. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-81 (3d Cir. 2000): see Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997) (holding that "when temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus").

As set forth above, Plaintiff "asked for help" from her union representative after her resignation. (ECF No. 2 at 7.) Plaintiff sought assistance from UniServ and Wines after her resignation. (Id.) Wines suggested she "might" enlist the PHRC and, "indirectly," the EEOC after plaintiff's resignation. (Id.) The PHRC handled plaintiff's case after her resignation. (Id.) The PHRC, however, closed plaintiff's case after one hundred and eighty days "[d]ue to the delayed response of the [D]istrict to her [PHRC and EEOC] complaint." (Id. at 8.) Plaintiff's union representative "[told] her earlier" that "he had filed a grievance for her earlier in case she needed it," but later the union informed her "he did not file any grievance for her." (Id.) Plaintiff, however, does not provide specific, or even approximate, dates on which she submitted these formal or informal complaints (i.e., the timing of when she engaged in a protected activity) or

when the District refused to rescind her resignation (i.e., the alleged adverse employment action). It is, therefore, impossible to assess whether there was a "close temporal proximity" between the protected activity and the adverse employment action, as required for a prima facie showing of retaliation under Title VII. Abramson, 260 F.3d at 288. "[W]here the well-pleaded facts do not permit the court to infer more than the *mere possibility* of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 678–79 (quoting FED. R. CIV. P. 8(a)(2)). Plaintiff fails to make sufficient factual allegations for the court to infer that it is plausible that defendant refused to rescind her resignation in retaliation for plaintiff's choice to engage in activities protected under Title VII and the PHRA.

### ii. Pattern of antagonism

Plaintiff did not plead facts plausibly establishing a pattern of antagonism with respect to plaintiff's Title VII protected activities. Plaintiff alleges only *one* antagonistic act on the part of defendant *after* she engaged in protected activity—defendant refused to rescind her letter of resignation after she spoke with her union representative and the PHRC. One act does not establish a pattern. Cf. Robinson v. Se. Pa. Transp. Auth., 982 F.2d 892, 895 (3d Cir. 1993) (finding a pattern of antagonism where the plaintiff was subjected to a "*constant barrage*" of written and verbal warnings, inaccurate point totalings, and disciplinary action, all of which occurred soon *after* the plaintiff's initial complaints and continued until his discharge) (emphasis added). For these reasons, plaintiff's Title VII and PHRA gender-based retaliation claims must be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

### D. Section 1983—14th Amendment Claims

### 1. Gender Discrimination—Equal Protection Claim

Plaintiff alleges that:

> [i]n engaging in a pattern of unwanted sexual gender harassment against [plaintiff], and by knowingly engaging in a pervasive and ongoing pattern of gender-based harassment, discrimination, and retaliation against [plaintiff] . . . , [Principal Swartz] violated [plaintiff's] right to equal protection under Fourteenth Amendment to the United States Constitution . . . .

(ECF No. 2 at 12.)

In order to prevail on a § 1983 claim for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must prove that she was subject to "purposeful discrimination" because of her sex. Keenan v. City of Phila., 983 F.2d 459, 465 (3d Cir. 1992). To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against her because of her membership in a protected class. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 196 (3d Cir. 2009).

"The showing required to prove a § 1983 gender discrimination claim is identical to that required by Title VII." Wood v. Univ. of Pittsburgh, 395 F. App'x 810, 816 (3d Cir. 2010) (citing Stewart v. Rutgers, 120 F.3d 426, 432 (3d Cir. 1997)); accord Wright v. Rolette Cnty., 417 F.3d 879, 884 (8th Cir. 2005) (repudiating the defendant's argument that there are different standards for Title VII and § 1983 gender discrimination claims and holding that "sexual harassment claims under section 1983 are analyzed under the same standards developed in Title VII litigation and the elements of a prima facie case are the same regardless of which statute the plaintiff uses to seek relief"); Cross v. Alabama, 49 F.3d 1490, 1508 (11th Cir. 1995) ("When section 1983 is used as a parallel remedy for a violation [of Title VII] . . . the elements of the two causes of action are the same." (internal quotation omitted)); Beardsley v. Webb, 30 F.3d 524, 529 (4th Cir. 1994) ("Courts may apply the standards developed in Title VII litigation to similar litigation under § 1983.").

Plaintiff alleges that she was treated differently on account of her gender. Women are a protected class. See Miller v. Beneficial Mgmt. Corp., 977 F.2d 834, 847 (3d Cir. 1992). Plaintiff alleges that because of her membership in the protected class, she was discriminated against and thereby deprived of her constitutional right to equal protection of the law. Plaintiff's § 1983 Equal Protection claim is, however, premised upon the same factual allegations and circumstances supporting her gender discrimination claims pursuant to Title VII. For the same reasons that plaintiff fails to state gender discrimination claims under Title VII and the PHRA, plaintiff fails to state gender discrimination claims under § 1983 and the Equal Protection Clause. Plaintiff fails to allege facts which raise even the "sheer possibility" that Swartz "purposefully" discriminated against plaintiff, or acquiesced in such discrimination, because of her gender. Iqbal, 556 U.S. at 678; Andrews, 895 F.2d at 1478. Plaintiff fails to allege facts leading to the plausible inference that she "received different treatment from that received by other individuals similarly situated . . . based upon her gender." Andrews, 895 F.2d at 1478. As discussed, plaintiff implies her long-term substitute was treated favorably, but plaintiff fails to allege plausibly that defendant, either purposefully or through acquiescence, treated the substitute favorably *based upon* plaintiff's gender. Plaintiff's factual allegations constitute the type of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that do not suffice for purposes of plausibly stating a claim pursuant to Rule 12(b)(6). Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555.) Accordingly, plaintiff's § 1983 gender discrimination claims against defendant must be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

2.    **Deprivation of Due Process claim**

Plaintiff alleges:

[i]n taking away her classroom, positions, resources, supplies, and dignity [Swartz] used his position to infringe upon [plaintiff's] rights in her public employment, in violation of the Fifth and Fourteenth Amendments . . . , and knowingly caused her employment to be terminated under false pretenses and without due process.

(ECF No. 2 at 12.)

The Fourteenth Amendment Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures. U.S. CONST. amend. XIV. Plaintiff's Due Process claim, therefore, depends upon "[her] having had a property right in continued employment." Clevand Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985). "If [she] did [have such a property right], the State could not deprive [her] of this property without due process." Id. Property interests are not, however, created by the Constitution, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Id. Plaintiff, must therefore, allege facts leading to the plausible inference that she had a property right to continued employment within the District, which stemmed from an "independent source of law." Id.

In Loudermill, defendant-employer terminated plaintiff-employee for dishonesty without providing him "an opportunity to respond to the charge of dishonesty or to challenge his dismissal." Id. at 535. The plaintiff alleged that his continued employment was a property right based upon Ohio law, which defined his position as a "classified civil servant" and provided that such employees could be terminated only for cause. Id. The United State Supreme Court found that the Ohio statute "plainly create[ed] such [a property] interest" in continued employment because the law entitled the employee to retain his position "during good behavior and efficient service" and did not allow his dismissal "except for misfeasance, malfeasance, or nonfeasance in office." Id. at 538–39. Only after finding that the Due Process Clause applied to the employee's

case did the Court assess "what process [was] due" to the employee after the state deprived him of his property interest. Id. at 541.

In the area of public employment, the Supreme Court has held that a public college professor dismissed from an office held under tenure provisions, Slochower v. Board of Education, 350 U.S. 551 (1956), and college professors and staff members dismissed during the terms of their contracts, Wieman v. Updegraff, 344 U.S. 183 (1952), had property interests in continued employment that are safeguarded by Due Process.

Plaintiff does not allege, and the court cannot discern, any facts from which the court could reasonably infer that plaintiff possessed a Due Process-protected property right in continued employment within the District. Plaintiff does not point to any Pennsylvania law, or any other "existing rules or understandings that stem from an independent source," such as tenured status, an employment contract, or an implied promise of continued employment from the District, which would establish that she had a Due Process-protected right to continued employment within the District.

More importantly, plaintiff voluntarily retired from her position within the District, without constructive discharge, after meeting with Swartz on October 1, 2010. (ECF No. 2 at 6.) At the meeting, Swartz "said [plaintiff] would probably be asked to appear before a board of directors meeting" after he "reveal[ed] his desire, intent, and plan to terminate her." Id. As discussed, plaintiff does not allege that the District ever actually acted on Swartz's threats to deprive plaintiff of her property right, if any, to continued employment without an opportunity to be heard. If anything, plaintiff's allegations with respect to the "board or directors meeting" suggest that she would have had an opportunity to contest her termination had the District decided to act on Swartz's threats. For these reasons, plaintiff's § 1983 Fourteenth Amendment

Due Process claim must dismissed for failure to state a claim upon which relief can granted pursuant to Rule 12(b)(6).

## V.     **Conclusion**

For the reasons set forth above, defendant's motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) will be granted without prejudice and plaintiff's motion to deny the motion to dismiss will be denied.[8] Plaintiff's complaint will be dismissed in its entirety. An appropriate order will be entered.

Plaintiff may seek leave of court to file an amended complaint within thirty days of the issuance of this memorandum opinion and accompanying order.  If plaintiff does not seek leave to amend the complaint within thirty days of the issuance of this memorandum opinion and

---

[8]     In plaintiff's response (ECF No. 12) to defendant's motion to dismiss and second supplemental response (ECF No. 17) to defendant's motion to dismiss, she argues defendant's Rule 12(b)(6) motion to dismiss is "inappropriate[]" because the instant action has been placed in the court's Alternative Dispute Resolution (ADR) process. (ECF No. 13.) In requesting that defendants not be permitted to request dismissal of the case in the future based upon the parties' participation in the ADR process, plaintiff effectively requests that the court stay the instant litigation pending resolution of the ADR process. (ECF No. 12.)

A court has discretion to stay a case if the interests of justice so require. United States v. Kordel, 397 U.S. 1, 12 n.27 (1970). In deciding whether to stay an action, the court must "weigh competing interests and maintain an even balance." Landis v. N. Am. Co., 299 U.S. 248, 255 (1936).

Both parties in this case have an interest in the prompt and just resolution of their dispute. As set forth in this memorandum opinion, plaintiff failed to set forth claims for relief against defendant. Given that the court will grant defendant's motion to dismiss and dismiss plaintiff's complaint in its entirety, defendant's interest in the prompt and just resolution of this case outweighs plaintiff's interest in staying this action pending the outcome of the ADR process. For these reasons, staying the instant motion pending resolution of the ADR process would serve neither party. The court, therefore, denies plaintiff's motion to stay the proceedings pending the resolution of the ADR process. Plaintiff's motion to deny defendant's motion to dismiss will be denied.

In plaintiff's response in opposition (ECF No. 12) to defendant's motion to dismiss, she requests the court forbade defendant from filing a motion to dismiss in the future. In light of the court granting the motion to dismiss pending before the court, plaintiff's request that the court forbade defendant from filing a motion to dismiss in the future is denied.

accompanying order, the dismissal of the complaint will be with prejudice.


Dated: February 19, 2014                      <u>/s/ JOY FLOWERS CONTI</u>
                                                     Joy Flowers Conti
                                                     Chief United States District Judge

cc:
Betty Hibbard
PO 388
Crabtree, PA 15624